JOHN T. ELLIOT, as Administrator, etc., of CHARLES H. ELLIOT, Appellant, *v.* THE MUTUAL BENEFIT LIFE ASSOCIATION OF AMERICA, Respondent.

*Life insurance policy — evidence of an application therefor — false answer in the application — knowledge of the falsity thereof immaterial — time within which an action should be brought.*

The evidence which is proper and sufficient to show, in an action against an insurance company, an application for a policy of life insurance and the rejection thereof by a company other than the defendant, considered and commented upon.

When in an application for a policy of life insurance, the applicant warrants his answer to a certain question, it is immaterial whether he did or did not know his answer to be false.

A policy of life insurance provided that the by-laws and regulations of an association, the insurer, were to be considered as part of the contract between the insurer and the insured. The by-laws contained the provision that in any suit upon a certificate of membership or claim thereunder, after the expiration of one year after the death of the insured, such lapse of time should be taken and deemed conclusive evidence against the validity of the claim, any Statute of Limitations of any State or government to the contrary notwithstanding.

*Held,* that such stipulation was sufficient to prevent a recovery on the policy in an action brought after the expiration of one year from the death of the insured, providing that there was no evidence showing or tending to show that the defendant had waived such condition.

APPEAL by the plaintiff, John T. Elliot, as administrator, etc., of Charles H. Elliot, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of March, 1892, dismissing the plaintiff's complaint after a trial at the New York Circuit.

*Henry G. Atwater,* for the appellant.

*E. T. Lovatt,* for the respondent.

O'BRIEN, J.:

The action was brought to recover on a policy of insurance for $5,000, delivered by defendant to one Charles E. Blumner on August 1, 1887, and assigned to one Charles H. Elliot. Blumner died January 8, 1890, and Elliot on June 9, 1891, and thereafter letters of administration were taken out by the appellant.

The defenses to the action were, that defendant was imposed upon by Blumner by the suppression of facts which he should have divulged, and by false and fraudulent statements and misrepresentations, which constituted breaches of warranty, and that the claim was barred by a special contract limitation of one year.

The policy provided that "if any misrepresentations or fraudulent or untrue answers or statements shall have been made, or if any facts which should have been stated to the association have been suppressed * * * then in either event this agreement shall become null and void." And in the written statement made to the medical examiners the assured warranted the answers made by him to be true.

In his application the assured stated that no company had ever declined to grant insurance on his life ; and in support of the view that this was a false statement, an application made by the assured, in 1883, to the Equitable Life Assurance Society was produced and offered in evidence, which showed that it had been declined by that company.

In laying the foundation for this testimony, the defense called the doctor who made the examination of Blumner, and he testified that having concluded that it was a doubtful risk, he declined to recommend that a policy be issued, placing his declination on the application, and forwarded it to the Equitable Company in New York. In addition to the medical examiner, two other doctors employed by or connected with the Equitable Company were examined, one of whom testified that before the report was sent to the home office he signed his name to it, and the other that, after being received at the home office, he indorsed upon it, "Declined by Examiner," over his initials. And to show what action was taken by the company, this witness further said that the report with these indorsements was in the nature of a recommendation of the medical director to the executive officers not to issue the policy. "From us it goes to the executive department, and from there it goes to the executive officers, who would give the final transmission to the company, that of Dr. George W. Phillips." And in response to the question whether it was Dr. Phillips' action which made the rejection, he answered yes. Thereupon the paper was offered in evidence.

The defendant then offered in evidence a memorandum made by Dr. Phillips on the application, stating that the application was declined, the indorsement being in these words : " Declined by Ex. G. W. P." The objection to this paper being received with the memorandum of Dr. Phillips upon it was, that it was the declaration of a third party, and it is now insisted that the failure to call Dr. Phillips and prove what his action was, was fatal to the admissibility of the paper, the argument being based upon the rule that a mere memorandum is not evidence against third parties, except when made in the usual course of business, and when it is shown that the party who made it is dead.

In this argument, however, the counsel overlooks the fact that it was not sought to show what action had been taken by Dr. Phillips, but rather, what was the action of the company. And there being no objection taken, and no point made but that the indorsement was in the handwriting of Dr. Phillips on the original application, the question is presented whether this is competent evidence of the action of the company. If such action had been by a resolution of the board of directors, upon proving the authenticity of such resolution by the minutes of the company, a proper foundation would have been laid for the admission of the minutes in evidence to prove the action of the company. We think the same principle is applicable where, as here, the action of the company is to be determined, not by reference to resolutions in its minutes, but by what was done by the person authorized to state the company's action. As shown, the person upon whom this office and duty devolved was Dr. Phillips. And there would be as much force in the suggestion that, after the minutes of a board have been properly proved, before they would be admissible it would be necessary in all cases to produce the secretary who wrote them, as in this case to insist that, before the action of the company could be shown, it would be necessary to call Dr. Phillips, who was acting for the company, and whose memorandum was made, not for himself, but for the company, as evidence of the action it had taken.

The other argument against the force to be given to this evidence, that although the application was declined, there was no proof that such declination was known to the assured, we regard as equally unsound. It is true, as suggested by appellant, that the verb

" decline " has two meanings, but in its ordinary acceptation it meant, just what it said in connection with the language used in the question, and which could not have been misunderstood by the assured. It required him to state whether he had made any previous application to another company, and whether such application had or had not been declined.   Having warranted his answer, whether he knew or not was immaterial, because by reason of such a warranty he was bound to know whether it was true or not; and having taken the risk of that, even though he had no actual knowledge, and no proof was offered to show it was a willful falsehood, it was sufficient for the defendant to show as a matter of fact that the answer was false. He had applied in August, 1883, for a policy in the Equitable Life, and when he made his application to the respondent four years later, in 1887, he knew that none had been granted, and yet he warranted the answer which he made, that an application had not been made by him to any other company and declined.

The assured also stated that he was not afflicted with any disease or disorder; that he had not had any serious illness, local disorder or personal injury, tending to shorten life; that he had never had dizziness or disease of the bladder or urinary organs.   He was asked to give the name and residence of his usual medical attendant, and he stated that he had not consulted one.   To show that these statements were not true, the uncontradicted evidence given by Dr. Baldwin, who examined Blumner in 1883, was that, upon an examination of the urine of the assured, he found it contained sugar, from which he concluded that it indicated diabetes.   And, in addition, the son of the assured, in his testimony, says that he heard his father speak of the fact of having trouble with his kidneys, and that he was accustomed, prior to his death, to use test tubes for the purpose of ascertaining about his kidney trouble or urinary trouble, and that he had at different times before his death at least three physicians who attended him for a number of years and up to his last illness.   The plaintiff presented no evidence to destroy the force and effect of this testimony, and, therefore, there was no conflict which required that the learned trial judge should submit the question to the jury.

In addition to the defenses thus considered, there is another which we regard as equally fatal to the plaintiff's right to recover upon the

evidence as it stood, and which justified the dismissal of the complaint. The policy provided that the by-laws and regulations of the association were to be considered as part of the contract between the assurer and the assured. These contained the provision that in any suit upon a certificate of membership or claim thereunder, after the expiration of one year next after the death of a member, the lapse of time should be taken and deemed conclusive evidence against the validity of the claim thereby so attempted to be enforced, any Statute of Limitations of any State or government to the contrary notwithstanding. It appears, therefore, from the date already given of the death of Blumner, and the time when the action was commenced, that this suit was not brought within a year; and under the authorities which permit the parties by contract to fix a different Statute of Limitations than that provided by law, this was fatal to a recovery, unless there was some evidence in the case sufficient to submit to the jury, tending to show that the defendant had waived this condition. For that purpose we have examined the record, but find no such evidence. It does appear that those representing the plaintiff endeavored, within the year prior to the beginning of the suit, to effect a compromise, but there was nothing done by the association which could be construed into a waiver of its right to insist upon the condition as to the time of bringing the suit.

It is claimed, however, that the proof offered as to the by-laws was not conclusive for the reason that, although by-laws of the defendant which contained this provision were offered in evidence, it was not shown that they were the by-laws which were in existence at the time the policy or certificate of membership was taken out. The answer to this, however, we think is to be found in the fact that in the first place the bill of particulars called attention to this by-law of the defendant as contained in the contract between the parties, and stated that it was adopted January 12, 1885, and that a copy of the same was attached and incorporated, and made a part of the bill of particulars. In this state of the pleadings the counsel for defendant offered the by-laws in evidence, and they were admitted and marked as an exhibit, without any objection being taken thereto, and without the point now sought to be availed of having been made. In the bill of particulars referred to it was stated that " the said by-law is evidenced by the minutes, and the book in which the same are

kept of the defendant," and, in the absence of any objection, we are to assume that the minutes and the book in·which they were kept were the testimony offered, and that the extract, which is one of the exhibits in the case, was taken therefrom.   We cannot assume, for the purpose of interfering with the judgment, and, in the absence of any objection or exception, that incompetent proof of such by-laws was offered, but we think, in view of what is stated in the bill of particulars, that the reasonable and fair inference to be drawn from the manner in which the by-laws were admitted is, that they were properly proven, and by competent evidence were shown to be the by-laws in force at the time the policy was taken out by the assured.

We think that, upon any of the grounds to which we have referred, the ruling of the trial judge was right, and that upon the whole case the judgment should be affirmed, with costs.

PARKER, J., concurred; VAN BRUNT, P. J., concurred in result.

Judgment affirmed, with costs.